Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KAMILIA CASON,<br><br>                    Petitioner,<br><br>          v.<br><br>SARAH DAVIS,<br><br>                    Respondent. | Civil Action No. 18-9540 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is petitioner Kamila Cason's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1 ("Petition" or "Pet.")). Following an order to answer, respondent Sarah Davis ("Respondent") opposed the Petition (D.E. No. 6 ("Opp.")). Having considered the parties' arguments, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court denies the Petition and a certificate of appealability.

## I.     BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will recount salient portions of the facts as set forth by New Jersey Superior Court, Appellate Division in its opinion on direct appeal:

> The trial record reveals that at approximately 9:00 p.m. on June 4, 2005, [Petitioner] and Krystal Wesley began arguing when Wesley demanded that [Petitioner] settle a ten dollar debt. When [Petitioner] told Wesley she did not have her money, Wesley took a pack of

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

cigarettes and a five dollar bill from [Petitioner]'s pocket. The argument took place in Wesley's first floor apartment, in a two-family home at 262 Duncan Avenue, Jersey City. At the time, there were several other people in the apartment, including Wesley's young daughter and one of Wesley's friends, Shaymicha. The argument continued on the street outside of the apartment. Wesley grabbed [Petitioner] and unknowingly dropped her only key to her apartment. Wesley then left to go to a store and upon arrival realized she did not have her key. Wesley returned and asked [Petitioner] for the key, but [Petitioner] refused to return it until Wesley returned [Petitioner's] cigarettes.

Wesley told her friend Shaymicha to grab [Petitioner]. Her friend ran after [Petitioner] and [Petitioner] ran face first into a car, which caused her to faint and fall on the ground. Wesley and Shaymicha starting kicking her and left her unconscious. Subsequently, Wesley took her daughter, went to 320 Duncan Avenue where she found her brother, and asked him to watch her daughter.

Approximately twenty minutes later, [Petitioner] arrived at that location. The women resumed arguing on the street. Wesley went upstairs to her mother's apartment on the third floor at 320 Duncan Avenue. Sometime thereafter, [Petitioner] followed her and sought entrance to the apartment. Wesley's mother allowed [Petitioner] to enter the apartment. Once inside, she told [Petitioner] to leave and when she did not, she proceeded to punch [Petitioner] in the face. [Petitioner] then stated "I'm going to kill that B." Wesley's friend then "slammed" [Petitioner] onto a coffee table. Wesley and her friend left the apartment while [Petitioner] remained on the floor inside. [Petitioner] still had Wesley's key. Approximately ten minutes later, while Wesley was outside her mother's apartment talking to her uncles, she saw [Petitioner] leave and begin "running around the project."

At approximately 11:35 p.m., Wesley's next door neighbor, Desiree Ortega, and her friend, Latoya Fuentes,[2] were sitting in Fuentes' car outside of 264 Duncan Avenue, talking and applying makeup before going out for the evening. Their attention was suddenly drawn to what Fuentes described as a "burst" of noise that sounded like a door opening. Fuentes stated that she saw someone coming out of 262 Duncan Avenue, "stumbling a little bit, in a rush." The person was carrying bags. She did not recognize the person who emerged from the doorway. However, Fuentes later identified that person as the individual whose picture appeared in *The Jersey Journal*. That picture was of [Petitioner]. Fuentes reiterated the photographic

---

[2]     At the time of incident, Latoya Fuentes' last name was Bartley.

identification in court, but could not make an in-court identification of [Petitioner]. In an out-of-court proceeding, Ortega was able to identify the person as [][Petitioner], who she knew as an acquaintance of Wesley, her next door neighbor. However, when asked if she could identify the [Petitioner] in-court as the person who she saw leaving the house, she responded, "not really." The prosecutor asked the court, "Could I have the [Petitioner] rise?" [Petitioner] objected, and the court denied the request.

Ortega and Fuentes then began driving to Hoboken. Approximately five minutes after leaving Duncan Avenue, Ortega received a "frantic" telephone call from her niece, who was babysitting Ortega's four children that evening at 264 Duncan Avenue. The women quickly returned to find Ortega's house and the adjoining building, 262 Duncan Avenue, on fire.

In the meantime, Wesley and two friends were walking from 320 Duncan Avenue toward Wesley's apartment. Wesley observed smoke coming from her house. When she got to the front of her house, she saw [Petitioner] run into the house and then out of the house. Wesley asked [Petitioner], "Why would you set my house on fire," to which [Petitioner] replied, "I didn't do it." Wesley, Shaymicha, and [Petitioner] then proceeded to fight.

Jersey City Police Detective Frank Caraballo was off-duty that night but happened upon the fire while driving in his personal vehicle. When he arrived at the scene, he saw smoke and observed Wesley and [Petitioner] fighting in front of the burning house. Caraballo observed emergency responders exiting the house carrying a small child, who firefighters were attempting to resuscitate on the hood of a car. The child was seven-week-old Lucas Gwinnett. Lucas and his brother, Jude, were sleeping in the upstairs apartment of 262 Duncan Avenue, when sometime before midnight, their mother, Jennifer Gwinnett, heard "banging noises" and noticed smoke in her hallway. Within minutes her apartment was engulfed in smoke. The family was pulled through their second floor window by firefighters. Jude suffered no injuries. However, Jennifer suffered third-degree smoke inhalation, and Lucas tragically died from carbon monoxide poisoning at the hospital later that night.

Arson Investigator Giacomo Antonicello arrived at the scene and inspected the interior condition of 262 Duncan Avenue shortly after the fire was extinguished. He noted there was evidence of fires ignited in several places in Wesley's ground floor apartment. Antonicello also found that all the stove top burners in the kitchen were turned to the "on" position and that there was debris

> intentionally piled on them. Antonicello concluded that a total of five separate fires were intentionally started throughout the apartment. As a result, the Gwinnett's upstairs apartment was filled with noxious smoke.

*State v. Cason*, No. A-2612-09T1, 2012 WL 4511279, at *1–2 (N.J. Super. Ct. App. Div. Oct. 3, 2012).

The Hudson County Grand Jury indicted Petitioner with one count of murder, in violation of N.J. Stat. Ann. § 2C:11-3(a)(1) or N.J. Stat. Ann. § 2C:11-3(a)(2) (count one); one count of first-degree felony murder, in violation of N.J. Stat. Ann. § 2C:11-3(a)(3) (count two); three counts of aggravated arson, in violation N.J. Stat. Ann. § 2C:17-1(a) (counts three, four, and five); one count of false swearing, in violation of N.J. Stat. Ann. § 2C:28-2(a) (count six); and one count of unsworn falsification, in violation of N.J. Stat. Ann. § 2C:28-3(a) (count seven).  (D.E. No. 9-2).

On December 11, 2008, a jury convicted Petitioner of first-degree felony murder in violation of N.J. Stat. Ann. § 2C:11-3(a)(3) and three counts of aggravated arson in violation of N.J. Stat. Ann. § 2C:17-1(a).[3]  (D.E. No. 9-3 at 1[4]).  On February 27, 2009, Petitioner was sentenced to a term of forty-years imprisonment, subject to eighty-five percent parole ineligibility pursuant to the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2, followed by five years of parole supervision upon release.  (*Id.*).

On January 26, 2010, Petitioner filed a Notice of Appeal with the New Jersey Appellate Division.  (D.E. No. 9-4 at 68–69).  The Appellate Division affirmed Petitioner's convictions on

---

[3]      A person commits felony murder when "engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary, kidnapping, carjacking, criminal escape or terrorism . . . and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants . . . ."  N.J. Stat. Ann. § 2C:11-3(a)(3).  A person commits aggravated arson when by "start[ing] a fire or caus[ing] an explosion, whether on his own property or another's: (1) Thereby purposely or knowingly placing another person in danger of death or bodily injury[] . . ."  N.J. Stat. Ann. § 2C:17-1(a).

[4]      Pin cites to Docket Entry Numbers 9-3, 9-4, and 9-10 are to the pagination automatically generated by the CM/ECF.

October 3, 2012.  *Cason*, 2012 WL 4511279, at *7; (D.E. No. 9-6).  Thereafter, on March 27, 2013, the New Jersey Supreme Court denied Petitioner's request for certification.  *State v. Cason*, 63 A.2d 229 (N.J. 2013).  In December 2013, Petitioner filed a *pro se* post-conviction relief petition ("PCR Petition") in the Superior Court of New Jersey, Law Division.  (D.E. No. 9-10 at 53–59).[5] Following an evidentiary hearing, the state court denied the PCR Petition and Petitioner appealed to the New Jersey Superior Court, Appellate Division.  (*See id.* at 142–63).  On July 6, 2017, the Appellate Division affirmed the denial of Petitioner's PCR Petition.  *State v. Cason*, A-0787-15T2, 2017 WL 2875396, at *1–2 (N.J. Super. Ct. App. Div. July 6, 2017).  The New Jersey Supreme Court denied Petitioner's request for certification on January 26, 2018.  *State v. Cason*, 178 A.3d 58 (N.J. 2018).

Petitioner filed the instant *pro se* Petition on May 18, 2018.[6]  (*See generally* Pet.). Petitioner asserts five grounds for relief, which the Court summarizes as follows:

1.  The trial court violated Petitioner's due process right to a fair trial when the court failed to grant Petitioner's motion for judgment of acquittal because none of the witnesses saw Petitioner set the fire and the state failed to produce any evidence linking Petitioner to the arson;

2.  Petitioner was denied her Constitutional right to a fair trial when the prosecutor improperly bolstered the credibility of the state's witness by asking Petitioner to stand when the state's witness failed to make an in-court identification of Petitioner;

3.  Petitioner's due process right to a fair trial was violated when, during the sentencing hearing, the trial court:

    a.  Precluded Petitioner's mother from speaking at the sentencing hearing; and

    b.  Inappropriately considered the fact Petitioner exercised her

---

[5]    Counsel was appointed and subsequently filed a brief in support of Petitioner's *pro se* PCR Petition on October 16, 2014.  (D.E. No. 9-10 at 64–135).  On February 19, 2015, counsel filed a supplemental letter and an investigation report in support of the PCR Petition.  (*Id.* at 136–41).

[6]    Petitioner purportedly signed the Petition roughly two months earlier, in March 2018.  (Pet. at 16–17).

constitutional right to a trial as an aggravating factor during sentencing.

4. Ineffective assistance of trial counsel for failing to:

    a. Interview and call as a witness the owner of 262 Duncan Avenue, the home where the fire took place; and

    b. Interview and call as a witness Sharnice Jackson, who could have provided an alibi for Petitioner's whereabouts when the fire started.

5. The cumulative effect of the combined errors raised in the post-conviction relief rendered the trial unfair and violative of Petitioner's constitutional right to due proceed and a fair trial.

(*See id.* at 6–12).  Respondent opposed the Petition.  (*See generally* Opp.).

## II. LEGAL STANDARD

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. A habeas petitioner bears the burden of establishing each claim presented in his or her petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).  Under 28 U.S.C. § 2254, as amended by the AEDPA, federal courts reviewing habeas corpus petitions must give great deference to the determinations of state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 773 (2010).  Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record.  *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

6

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or confronted a set of materially indistinguishable facts from U.S. Supreme Court precedent and arrived at a different result than the one reached by the U.S. Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Federal law is clearly established for these purposes where it is expressed in "only the holdings, as opposed to the dicta" of the U.S. Supreme Court. *Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is "objectively unreasonable," rather than a merely erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice*

7

*v. Collins*, 546 U.S. 333, 339 (2006)).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, "a petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court."  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quoting *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)).  "This requirement ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights."  *Id.* (quoting *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (internal quotations omitted).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III.   ANALYSIS

### A.   Ground One: Petitioner's Motion for Judgment of Acquittal

In ground one, Petitioner argues that the state court "violated [P]etitioner's due process and fair trial constitutional rights" when it denied her motion for judgment of acquittal.  (Pet. at 6). Petitioner argues that the state court erred in failing to grant her motion for judgment of acquittal because "none of the witnesses saw [P]etitioner set any fire and the State failed to produce any evidence linking [P]etitioner to the arson."  (*Id.*).

A motion for judgment of acquittal is a motion to challenge the sufficiency of the evidence presented at trial. *See Jackson v. Virginia*, 443 U.S. 307, 317 n.10 (1979). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324; *accord McDaniel v. Brown*, 558 U.S. 120, 121 (2010). Accordingly, the Supreme Court has stated that *Jackson* requires:

> a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*McDaniel*, 558 U.S. at 133 (internal citations and quotations omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict."). "Stated differently, a court reviewing the sufficiency of the evidence may overturn a conviction only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson*, 443 U.S. at 324). This inquiry requires federal courts to review "state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (internal quotations and citation omitted).

The Supreme Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence." *Jackson*, 443 U.S. at 320, n.13. "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless of whether

that evidence was admitted erroneously." *McDaniel*, 558 U.S. at 131 (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)).  Moreover, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

On direct appeal, the New Jersey Appellate Division denied Petitioner's claim explaining that, on a motion for judgment of acquittal, the governing test is as follows:

> whether the evidence viewed in its entirety and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged.

*Cason*, 2012 WL 4511279, at *3 (quoting *State v. DA.*, 923 A.2d 217, 220 (N.J. 2007) (citing *State v. Reyes*, 236 A.2d 385, 388 (N.J. 1967))).  Even if, as Petitioner argues, "none of the witnesses saw [her] set any fire," the New Jersey Appellate Division noted that while the evidence adduced at Petitioner's trial was circumstantial, "circumstantial evidence by itself may be sufficient to support a guilty verdict."  (*Id.* (citing *State v. Franklin*, 245 A.2d 356, 367 (N.J. 1968)).  The Appellate Division found that the trial court properly denied the motion for judgment of acquittal, noting that the State's evidence showed:

> the physical altercation between Wesley and [Petitioner] on the night of the arson and felony murder; [Petitioner's] verbal threat to Wesley; [Petitioner's] possession of the only key to Wesley's apartment; [Petitioner's] presence at Wesley's building prior to and contemporaneous with the fire; [Petitioner's] possession of bags while she exited Wesley's building; Jude's death by carbon monoxide poisoning and Jennifer's third-degree smoke inhalation from the fire; the condition of Wesley's apartment after the fire; the Antonicello's conclusion that a total of five separate fires were intentionally started throughout the apartment.

*Id.* at *4.  Based on this evidence, the Appellate Division found "the evidence presented by the State's various witnesses together with the reasonable inferences that could have been drawn from that evidence, considered in a light most favorable to the State, were sufficient for a reasonable

jury to find that the State proved all elements of the three counts of arson and felony murder beyond a reasonable doubt." *Id.*

Based on the aforementioned evidence, it was objectively reasonable for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.  Thus, the Appellate Division properly found that the lower court did not err by denying Petitioner's motion for acquittal.  Thus, the Appellate Division's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of *Jackson* and its progeny.  *See Nieves v. Nogan*, No. 14-7676, 2018 WL 3085214, at *5 (D.N.J. June 22, 2018) ("Because the evidence in this matter was clearly sufficient, the Appellate Division's rejection of [p]etitioner's claim was not unreasonable.").  Accordingly, Petitioner is not entitled to habeas relief on ground one.

**B.      Ground Two: Witness Credibility**

Second, Petitioner submits that she "was denied a fair trial under the Constitution" because the "prosecutor improperly bolstered the credibility of the State's witness when the prosecutor asked the [P]etitioner to stand" after "the State's witness failed to make an in-court identification of the [P]etitioner."  (Pet. at 7).

Petitioner's argument relates to the direct examination of Desiree Ortega, the State's witness:

> Prosecutor: Now did you ever have the opportunity to either see or meet with a young woman by the name of Kamila Cason?
>
> Witness: I've seen her, yes.
>
> Prosecutor: And that was during the course of the year that you lived at 264 Duncan Avenue?
>
> Witness: Yes, sir.
>
> Prosecutor: Back at that time, do you remember what she looked like?

Witness: Yes, I can say - -

Prosecutor: Could you please tell the members of the jury what she looked like back in 2005; the style of her hair - -

Witness: She had - -

Prosecutor: - - or anything distinguishing about her that you remember?

Defense Counsel: Excuse me, Judge. I have an objection into relevance, ID.

The Court: I'm going to overrule that now. We'll see where he's going.

Witness: She had braids. She would wear baggy clothing, men boxers, walk around like that pretty much.

Prosecutor: Now it's been three years since you've seen her. Is that correct?

Witness: Yes, sir.

Prosecutor: If I asked you if you could identify her in court today, could you?

Witness: Not really.

Prosecutor: Could I have the defendant rise?

Defense Counsel: Judge, objection. I - -

The Court: Yea, sustained. Either she can identify her or she can't.

(D.E. No. 9-23, December 9, 2008 Trial Transcript ("Dec. 9, 2008 Trial Tr.") at 15:2–16:9).  On direct appeal, the Appellate Division highlighted that during the testimony quoted above, the trial court sustained Petitioner's objection to the prosecutor's request that she stand up.  *Cason*, 2012 WL 4511279, at *5.  The Appellate Division then denied Petitioner's claim as "without sufficient merit to warrant discussion."  *Id.*

12

Prosecutorial misconduct is not a basis for reversal unless the conduct was so egregious that it deprived defendant of a fair trial. *See Parker*, 132 S. Ct. at 2153; *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristofaro*, 416 U.S. 637 (1974)). Accordingly, a prosecutor's statements must constitute a clear infraction and substantially prejudice a defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense in order to warrant a reversal. *State v. Roach*, 680 A.2d 634, 639 (N.J. 1996); *United States v. Young*, 470 U.S. 1, 11–12 (1985). In making this determination, courts must examine the entire proceedings of the case. *Donnelly*, 416 U.S. at 643. For example, courts must consider the prosecutor's conduct, the effect of curative instructions, and the strength of the evidence. *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (citing *Darden*, 477 U.S. at 182).

To the extent Petitioner claims that the prosecutor improperly vouched for the witness's credibility, the Court notes that "[v]ouching is a type of prosecutorial misconduct." *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002). Vouching occurs if the following two criteria are met: (1) the prosecution "assure[s] the jury that the testimony of a Government witness is credible," and (2) the assurance is "based on either the prosecutor's personal knowledge or other information that is not before the jury." *Id.* "Unless it affect[ed] [the] fundamental fairness of the trial," "vouching does not rise to the level of a federal due process violation." *Id.* As such, "habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned." *Id.*

The instant Petition does not elaborate on the assertion that the prosecutor's request for Petitioner to stand bolstered the witness's credibility. (*See* Pet. at 7). In the event Petitioner claims that either (i) the request gave the witness another opportunity to identify Petitioner or (ii) the request signaled why the witness was unable to identify Petitioner, those arguments are meritless.

13

Even assuming *arguendo* that the prosecutor attempted to change the witness's testimony—so that she could identify Petitioner in the courtroom or justify why she could not initially identify Petitioner—the prosecutor's request did not deny Petitioner her right to a fair trial because the lower court sustained counsel's objection in Petitioner's favor.  The trial court ultimately did not permit Petitioner to stand at the prosecutor's request.  And the prosecutor did not comment on the witness's credibility or the truthfulness of her testimony.   Nor did the prosecutor question the witness further on the identification issue.  Thus, the witness's answer—that she could not identify Petitioner in court—remained final. (*See* Dec. 9, 2008 Trial Tr. at 15:2–16:9).  For these reasons, the prosecutor's request did not result in a fundamentally unfair trial.  Accordingly, ground two in the instant Petition does not warrant habeas relief.

### C.      Ground Three: Sentencing Errors

Third, Petitioner argues that the trial court erred twice during her sentencing hearing.  (Pet. at 9).  First, she claims that the lower court precluded Petitioner's mother from speaking at the sentencing hearing.  (*Id.*)  Second, she maintains that the court inappropriately considered the fact that Petitioner had exercised her constitutional right to a trial as an aggravating factor.  (Pet. at 9).

Federal habeas relief is available to a petitioner if he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Estelle v. McGuire*, 502 U.S. 62, 67–68 n.2 (1991).  Sentencing is a matter of state criminal procedure and so long as the sentence imposed falls within the statutory bounds, it does not implicate federal constitutional issues.  *See, e.g.*, *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984) (denying petitioner's disparate sentence claims where there was "no contention that the disparity . . . was the result of discrimination based on race, sex, or similar grounds which would implicate the federal constitution. . . . Nor is there support for [petitioner's] assertion that the fourteenth

amendment confers a due process right to the correct determination of issues of state law."); *see U.S. ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute grounds for federal habeas relief); *U.S. ex rel. Long v. Rundle*, 327 F.2d 495, 496 (3d Cir. 1964).

### (i)     Witness Testimony at Sentencing

At sentencing, defense counsel noted that Petitioner maintained her innocence.  (D.E. No. 9-26, February 27, 2009 Sentencing Transcript ("Sent. Tr.") at 13:11–12).   Defense counsel explained, "I know the [c]ourt before imposing sentence may take into consideration remorse of a defendant, prior to being sentenced.  It's not an issue of [Petitioner] being unremorseful at this time because she maintains her innocence." (*Id.* at 13:12–16).  Defense counsel made several sentencing arguments and informed the court that Petitioner's mother was in the courtroom and wanted to address the court before sentence was imposed.  (*Id.* at 20:11–15).  On direct appeal, Petitioner argued that her mother would have provided the court with insight pertaining to her remorse.  *Cason*, 2012 WL 4511279 at *6.   The following exchange occurred at sentencing:

> The Court: I'll hear Ms. Cason. I don't generally hear family members of defendants.
>
> Defense Counsel: Okay.
>
> The Court: That's not my practice.
>
> Defense Counsel: Okay.
>
> The Court: I am required by statute and, of course, the family member of [t]he victim or the victim herself is in a uniquely different situation. And, so, of course we call upon them, but I just don't do that. I know some other judges do. But on the rare occasion when I have, it has not worked out well. You know, it's somebody coming in to start telling me that somebody who has pled guilty is not really guilty and - -
>
> Defense Counsel: I understand.

15

The Court: -- you know, all -- and it doesn't often help. I always welcome letters and I always read the letters.

(*Id.* at 20:16–21:8). Defense counsel then explained that Petitioner's mother did send a letter to the court; however, the letter went to her return address and she did not have it at the sentencing hearing. (*Id.* at 21:9–21).

Petitioner raised this issue on direct appeal and the Appellate Division denied the claim as follows:

> [Petitioner] contends that her mother's address to the court could have provided "real insight" in evaluating [Petitioner's] assertion of remorse. Without her mother's statement, [Petitioner] argues, the court improperly failed to consider a non-statutory mitigating factor that may have ultimately reduced her sentence. [Petitioner] further contends that, in light of our Supreme Court's decision in [*State v. Blackmon*, 997 A.2d 194 (N. J. 2010)] the judge erred by not providing sufficient reasons for prohibiting [Petitioner's] mother from speaking, which amounted to an abuse of discretion warranting a remand and resentencing. We note [Petitioner's] sentencing took place before the Court's decision in *Blackmon*. Although the *Rules of Court* do not provide explicit guidance, trial judges have discretion "in allowing members of a defendant's family or others" to be heard at sentencing. *Blackmon*, *supra*, 202 N.J. at 300. *But cf. id.* at 308–09 (Long, J. and Rabner, C.J., concurring) (concluding that defendant has a right to present evidence that bears on an aggravating or mitigating factor).
>
> We need not address the retroactive application of *Blackmon* because defense counsel did not make a proffer of any mitigating factor, nor [did counsel] object to the judge's decision, and the judge's reason for the exercise of her discretion was set forth on the record. Further, defense counsel stated, "Your honor, with regard to mitigating factors I will concede there are . . . no mitigating factors."

*Cason*, 2012 WL 4511279 at *6.

Thus, the court below had discretion to allow Petitioner's mother to address the court at sentencing. (*Id.*) The sentencing judge explained on the record that he did not commonly allow

defendants' family members to speak at sentencing because they often address the issue of guilt. (Sent. Tr. at 20:16–21:8). In this case, Petitioner maintained her innocence. (*Id.* at 13:10–12). Although Petitioner believed her mother would speak to her remorsefulness, defense counsel had informed the court that this case was "not an issue of [Petitioner] being unremorseful . . . because she maintain[ed] her innocence." (*Id.*)

The Appellate Division's determination that the court adequately explained its reasons for refusing to hear Petitioner's mother during sentencing was neither contrary to, nor an unreasonable application of, federal law. *See Blackmon*, 997 A.2d at 208 (rejecting the notion that "a right to be heard" at sentencing "is to be extended to some class of family members of any and all defendants and noting that judges retain discretion to decide who may speak "apart from those whose rights to speak are already established" but that the determination "must be accompanied by some expression of reasons sufficient to permit appellate review"). Indeed, because Petitioner's claim rests on a state law issue, it is not a claim for federal habeas relief. *See Estelle*, 502 U.S. at 67–68. Petitioner has in no way shown that her sentence was contrary to, nor an unreasonable application of, federal law. Furthermore, this Court is without jurisdiction to reconsider the Appellate Division's determination of a pure state law question.

**(ii)    Sentencing Court's Consideration of Petitioner's Remorse**

At Petitioner's sentencing hearing defense counsel noted that if Petitioner felt that she was guilty, then, "like any other person she would, of course, express remorse." (Sent. Tr. at 13:12–19). The court subsequently commented that at the time of sentencing—four years after the fire—Petitioner had yet to begin the healing process. (*Id.* at 24:3–9). While the court acknowledged how difficult it would be for any person to admit to having started a fire that ultimately resulted in an infant's death, such an admission would have spared the baby's mother any additional grief she

17

endured during the trial process.  (*Id.* at 24:18–25:4).  In essence, the court expressed frustration

that Petitioner could have accelerated the mother's path to some semblance of closure.  (*Id.* at

25:4–8).  The court then explained, however, that Petitioner's choice to go to trial instead of

pleading guilty would not be held against her.  (*Id.* at 25:9–12 ("I'm not saying that you don't have

the right to a trial, and I'm not going to punish you for exercising your right to a trial.  I believe in

that. I believe in your Constitutional Right.")).  However, the court only addressed that fact because

of its relevance to the non-statutory mitigating factor of remorse.  Specifically, the court stated:

> But, you know, and I learned a whole lot more about the case, and it
> becomes harder for me to be more lenient, because I don't see an
> acceptance of responsibility, which is the first thing you need to do
> in order to show me these mitigating factors, that your character and
> attitude are different now.  The non statutory factor of remorse.  Self-
> awareness, because that's the first thing you need in order to say,
> yeah, I'm not going to be doing these things because I know what I
> did was terrible, and I've got to atone everyday for it.  So these are
> all  --  these are the things that are very difficult, you know, for me to
> think about, Ms. Cason.

(*Id.* at 25:15–26:5).

In reviewing this basis for relief, the Appellate Division found it meritless because the

record shows "the exact opposite of what [Petitioner] argues."  *Cason*, 2012 WL 4511279 at *6

(noting three aggravating factors expressed by the court at sentencing, including (i) "the gravity

and seriousness of harm inflicted;" (ii) Petitioner's "risk of recidivism;" and (iii) "the need to deter

'[Petitioner] and others from violating the law'").  This Court's review of the sentencing transcript

makes clear that the trial court considered Petitioner's silence as related to guilt only in connection

with the *mitigating* factor of remorse.  Indeed, the judge explicitly noted that Petitioner's decision

to go to trial was not held against her.  (Sent. Tr. at 25:9–12).  The court's consideration of

Petitioner's remorse as a possible mitigating factor does not raise a federal due process claim.

Therefore, the Appellate Division did not unreasonably apply clearly established federal law.

Accordingly, for all of the reasons expressed above, Petitioner's third ground for habeas relief is denied.

### D.    Ground Four: Ineffective Assistance of Trial Counsel

Fourth, Petitioner asserts two claims of ineffective assistance of trial counsel. (Pet. at 10). Petitioner maintains that trial counsel was ineffective for failing to interview and call the owner of 262 Duncan Avenue as a witness. (*Id.*) Petitioner claims the owner would have testified that the tenant, Krystal Wesley, threatened to burn down the building because she was being evicted. (*Id.*) Petitioner also asserts that trial counsel was ineffective for failing to interview and call Sharnice Jackson[7] as a witness because she would have provided an alibi for Petitioner's whereabouts when the fire started. (*Id.*)

The standard governing claims of ineffective assistance of counsel is well established, as set forth by the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984). To support an ineffective assistance of counsel claim under *Strickland*, a petitioner must first show "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Thus, a petitioner asserting ineffective assistance of counsel must show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts

---

[7]    The alleged alibi witness's name is reflected as "Charnice Jackson" in the transcript from Petitioner's PCR evidentiary hearing. (D.E. No. 9-28, April 30, 2015 PCR Hearing Transcript ("PCR Hearing Tr.") at 43:10).

"must be highly deferential . . . . [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

A petitioner also must affirmatively demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] . . . of a fair trial . . . whose result is reliable." *Id.* at 687; *see Shedrick*, 493 F.3d at 299. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must demonstrate "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Shedrick*, 493 F.3d at 299. "Because failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697–98).

When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Thus, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 698–99 (2002)). Rather, the petitioner "must demonstrate that the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *Id.* (quoting *Bell*, 535 U.S. at 698–99).

Under federal law, a failure to investigate potentially exculpatory evidence or witnesses

may form the basis of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 690–91; *United States v. Travillion*, 759 F.3d 281, 293 n.23 (3d Cir. 2014) ("The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness.").  To successfully establish this claim, a petitioner "must make 'a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained . . . and whether such information, assuming admissibility in court, would have produced a different result." *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *5 (D.N.J. May 2, 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)).  The petitioner must also demonstrate that he suffered prejudice.  *See Strickland*, 466 U.S. at 690–91.  But, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel and does not present sworn testimony from that witness, a petitioner will not be able to establish the prejudice prong of *Strickland*.  *See Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001) (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)).

Because Petitioner raised the same two ineffective assistance of counsel claims in her PCR Petition, an evidentiary hearing was held where Petitioner, trial counsel, and Sharnice Jackson testified.  (*See generally* PCR Hearing Tr.).  On collateral appeal, the Appellate Division summarized the testimony from the PCR evidentiary hearing as follows:

> The judge first heard the testimony of [Sharnice Jackson], [Petitioner's] alibi witness and long-time friend.  [Sharnice Jackson] testified she and [Petitioner] attended a barbeque at the time of the fire.  On cross-examination, however, she acknowledged attending "most days" of [Petitioner's] trial and knowing [Petitioner] received a forty-year sentence.  Nevertheless, she testified she never told [Petitioner's] attorney or law enforcement she could provide an alibi for [Petitioner]. Defendant then testified she told her trial attorney

21

> that [Sharnice Jackson] "could verify that [Petitioner] was with [Sharnice Jackson] at the time of the fire."
>
> The State then presented testimony from [Petitioner's] trial attorney, who said her trial strategy attempted to blame [Karen Wesley] for starting the fire. She explained that [Karen Wesley] "was being evicted[,] [a]nd so it was [counsel's] theory that she was getting back at the landlord[,] and she was the one that set fire to the . . . apartment." At trial, testimony from a court employee established the landlord had filed eviction proceedings against [Karen Wesley] less than two months before the fire. [Petitioner's] trial attorney testified she had no recollection of [Petitioner] ever mentioning an alibi witness or the name [Sharnice Jackson].

*Cason*, 2017 WL 2875396 at *1.  The court denied Petitioner's ineffective assistance of counsel claims in a nineteen-page opinion.  *Id.*; (*see* D.E. No. 9-10 at 142–60).  The Appellate Division affirmed the decision.  *Cason*, 2017 WL 2875396 at *5.

First, with respect to the owner of 262 Duncan Avenue, the court below noted that Petitioner never provided a certification that said owners "would confirm that Wesley made a statement indicating she would set her apartment on fire if evicted."  (D.E. 9-10 at 153). Furthermore, the court explained that (i) Karen Wesley testified at trial that she had been in the middle of resolving a dispute with her landlord, and (ii) an employee of the New Jersey Superior Court testified that after a complaint for eviction was filed in 2005, a warrant of removal against Wesley had been filed and was scheduled to be executed by July 12, 2005, just days before the fire.  (*Id.* at 152).  Thus, the record reflects that the jury heard about Wesley's eviction proceedings and any testimony from the owner of 262 Duncan Avenue would have been duplicative.  (*Id.*)  For these reasons, Petitioner fails to establish that alleged testimony from the owner of the property would have produced a different result at Petitioner's trial.  *See Brown*, 2016 WL 1732377, at *5. Accordingly, Petitioner has failed to show that she was prejudiced by counsel's failure to call the owner of 262 Duncan Avenue as a witness.

Second, the court also found that trial counsel was not ineffective for failing to call Sharnice Jackson as an alibi witness.  (*Id.* at 153).  The court considered trial counsel's testimony that counsel and Petitioner discussed "defense strategies, witness information, strengths and weaknesses of the case, representation, offers and potential defenses" and found trial counsel's testimony "credible in that Petitioner never mentioned the name 'Sharnice Jackson' as a possible alibi witness." (*Id.*)  The court also noted that Jackson admitted she attended Petitioner's trial "most days" and knew that Petitioner had been sentenced to forty years of incarceration.  (*Id.* at 153–54).  Overall, the court found Jackson's testimony incredible, noting that she is Petitioner's childhood friend who believed Petitioner was innocent, but yet declined to inform anyone that she was with Petitioner on the night of the fire.  (*Id.* at 154).

Counsel's failure to call Sharnice Jackson as an alibi witness at trial did not result in ineffective assistance.  This Court is required to presume that the lower court's factual findings are accurate and must accept the court's credibility determinations.  *See, e.g.*, *Dennis v. Sec'y, Penn. Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016).  Here, Petitioner has not shown that the court's factual findings and credibility determinations with respect to Sharnice Jackson were incorrect by clear and convincing evidence.  The record reflects that counsel and Petitioner discussed possible defenses and defense strategies, and Petitioner never mentioned Sharnice Jackson as a potential alibi witness.  (*See* PCR Hearing Tr. at 42:16–43:11).  As such, Petitioner fails to show that the state court's application of *Strickland* was unreasonable.  *See Williams*, 637 F.3d at 227.  Petitioner also has not established how counsel's failure to call Sharnice Jackson prejudiced her, particularly given that the court found Jackson's testimony incredible.  *See* 28 U.S.C. § 2254(e)(1). Accordingly, Petitioner's fourth ground for habeas relief is denied.

### E.       Ground Five: Cumulative Error

As Petitioner's final ground for relief, she avers that cumulatively, all of her claims denied Petitioner a fair trial under the U.S. Constitution.  (Pet. at 12).

To constitute redressable "cumulative error," the deficiencies in a case must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hem v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (citing *Donnelly*, 416 U.S. at 643 (1974)). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotations omitted).

Petitioner's claims were extensively reviewed and rejected on the merits by the state courts, both on direct and collateral review.  As discussed above, those decisions easily withstand review under the AEDPA because Petitioner's claims lack substantial merit.  Petitioner failed to show that any of the alleged errors cast doubt over Petitioner's guilt or prejudiced her in any manner.  *See Fahy*, 516 F.3d at 205.  Based on the foregoing, Petitioner's final ground for habeas relief is denied.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's arguments are without merit and jurists of reason

would therefore not disagree with the Court's denial of the instant Petition.  Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## V.      CONCLUSION

For the reasons stated above, the Petition is DENIED, and a certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.

Dated: September 2, 2021                          /s/ *Esther Salas*
                                                 **Esther Salas, U.S.D.J.**